## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Pamela Blaylock f/k/a Pamela Urman, and
Ervin Blaylock; Jeffrey A. Anderson and
Patricia Anderson; John B. Nelson and
Jody Nelson; Douglas Eugene Halver;
Mary Kay L. Ervin-Talbot; Kang Xiong,

                Plaintiffs,

      v.

Wells Fargo Bank, N.A.; Mortgage
Electronic Registration Systems, Inc.;
MERSCORP, Inc.; HSBC Bank USA, N.A.;
HSBC Mortgage Services, Inc.; and
Federal National Mortgage Association,

                Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 12-693 ADM/LIB

_____

William B. Butler, Esq., Butler Liberty Law, LLC, Minneapolis, MN, on behalf of Plaintiffs.

Charles F. Webber, Esq., and Trista M. Roy, Esq., Faegre Baker Daniels LLP, Minneapolis, MN, on behalf of Defendants Wells Fargo Bank, N.A., Mortgage Electronic Registration Systems, Inc., MERSCORP, Inc., HSBC Bank USA, N.A., and Federal National Mortgage Association.

Alan H. Maclin, Esq., Benjamin E. Gurstelle, Esq., and Mark G. Schroeder, Esq., Briggs & Morgan, PA, Minneapolis, MN, on behalf of Defendants Mortgage Electronic Registration Systems, Inc., MERSCORP, Inc., and HSBC Bank USA, N.A.

Chad A. Snyder, Esq., and Michael H. Frasier, Esq., Snyder Gislason Frasier LLC, Minneapolis, MN, on behalf of Defendants HSBC Bank USA, N.A. and HSBC Mortgage Services, Inc.

_____

## I. INTRODUCTION

On May 31, 2012, the undersigned United States District Judge heard oral argument on

Defendants Federal National Mortgage Association ("Fannie Mae"), HSBC Bank USA, N.A.

("HSBC Bank"), MERSCORP, Inc. ("MERSCORP"), Mortgage Electronic Registration

Systems, Inc. ("MERS"), and Wells Fargo Bank, N.A.'s ("Wells Fargo") Motion to Dismiss

[Docket No. 3], MERSCORP and MERS' Motion to Dismiss [Docket No. 5], HSBC Bank and

HSBC Mortgage Services, Inc.'s ("HSBC Mortgage") Motion to Dismiss [Docket No. 7], HSBC

Bank, MERSCORP, and MERS' Amended Motion to Dismiss [Docket No. 14], Plaintiffs'

Motion to Remand [Docket No. 18], and Defendants Fannie Mae, HSBC Bank, MERSCORP,

MERS, and Wells Fargo's Motion for Rule 11 Sanctions Against Plaintiffs' Counsel [Docket

No. 35].  For the reasons set forth below, the Motions to Dismiss are granted, the Motion to

Remand is denied, and the Motion for Sanctions is granted.

## II.  BACKGROUND[1]

Plaintiffs are homeowners of Minnesota properties.  Notice of Removal [Docket No. 1]

Ex. 3 ("Compl.") ¶¶ 1–6.  Plaintiffs executed promissory notes, and the Complaint states that

"[u]pon information and belief," each original lender transferred each promissory note to another

entity after closing.  Compl. ¶¶ 15–17.  Plaintiffs' Complaint also alleges that each mortgage

reserves the power of sale to the Lender, stating "Lender at its option may require immediate

payment in full" and may invoke the power of sale.  Compl. ¶ 27.  Because Defendants are

allegedly not the original lenders or valid transferees of the promissory notes, Plaintiffs claim

that they are falsely asserting the power of sale to their respective properties.  Compl. ¶¶ 28-35.

John and Jody Nelson (the "Nelsons") executed a promissory note and mortgage in favor

of Wells Fargo in 2006, and in July 2011, Wells Fargo assigned the Nelsons' mortgage to HSBC

Bank.  Compl. ¶ 3; Ex. re. Notice of Removal [Docket No. 11] 78.  The assignment was recorded

---

[1]  In considering Defendants' Motions to Dismiss, the Court takes the facts alleged in Plaintiffs' Complaint to be true.  See Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994). The Court will also consider public records and documents to which the Complaint refers.  Illig v. Union Electric Co, 652 F.3d 971, 976 (8th Cir. 2011).

in the Hennepin County Recorder's Office in August 2011.  Defs.' Mot. to Dismiss Appendix
[Docket No. 13] ("Appendix") 003.  On September 30, 2011, the HSBC Bank Trustee recorded a
Notice of Pendency, Defs.' App. 004–009, and the sheriff's sale was recorded on November 17,
2011.  Defs.' App. 010–033.

Douglas and Cami Halver (the "Halvers") executed a promissory note and mortgage in
favor of Citizens State Bank.  Compl. ¶ 4; Ex. re. Notice of Removal 42–44.  The Halver
mortgage was recorded on May 8, 2007, with MERS named as nominee.  Ex. re. Notice of
Removal 98.  On March 8, 2012, MERS assigned, and recorded the assignment of, the mortgage
to HSBC Bank as Trustee for Wells Fargo Asset Securities Corporation ("Wells Fargo ASC").
Defs.' App. 001.  No evidence has been offered that foreclosure proceedings have been initiated
on the Halvers' property.

Kang Xiong ("Xiong") executed a promissory note and mortgage in favor of Washington
Mutual Bank, FA ("WaMu"), which was recorded on May 24, 2004.  Compl. ¶ 6; Ex. re. Notice
of Removal 128.  In spring 2007, WaMu assigned the Xiong mortgage to Wells Fargo, and the
assignment was promptly recorded.  Defs.' App. 034.  On January 6, 2012, Wells Fargo initiated
foreclosure proceedings on the Xiong property, and on February 29, 2012, Wells Fargo recorded
a Sheriff's Certificate of Sale memorializing the sale of Xiong's property to Wells Fargo on
February 28, 2012.  Defs.' App. 039-053.

Jeffrey and Patricia Anderson (the "Andersons") executed a promissory note in favor of
River City Mortgage & Financial, LLC in June 2009, and a mortgage in favor of MERS that
same month.  Compl. ¶ 2.  The Andersons' mortgage was recorded on August 6, 2009.  Ex. re.

3

Notice of Removal 68.  MERS later assigned the Andersons' mortgage to Wells Fargo, which

was recorded on February 28, 2011.  Defs.' App. 054-056.  On May 25, 2011, Wells Fargo

initiated foreclosure proceedings and, on July 11, 2011, Wells Fargo recorded a Sheriff's

Certificate of Foreclosure Sale showing that the property had been sold to Wells Fargo.  Defs.'

App. 060-069.

Pamela and Ervin Blaylock (the "Blaylocks") executed a promissory note in favor of

Fremont Investment & Loan and a mortgage in favor of MERS, which was recorded on May 3,

2006.  Schroeder Aff. [Docket No. 17] Exs. B–C.  On December 23, 2010, MERS assigned the

mortgage to HSBC Bank as Trustee for Ace Securities Corp.  Schroeder Aff. Ex. D.  The

assignment was recorded on April 8, 2011.  Id.

Mary Kay L. Ervin-Talbot ("Ervin-Talbot") and her husband obtained a promissory note

in favor of Concorde Acceptance Corporation which was secured by a mortgage in favor of

MERS.  Snyder Aff. [Docket No. 10] Exs. A–B; Compl. ¶ 5.  The mortgage was recorded on

August 10, 2006, and MERS subsequently assigned the mortgage to HSBC, which recorded the

assignment on March 19, 2012.  Snyder Aff. Ex. C.

The six mortgages at issue all grant legal title, the power of sale, and the right to

foreclose to the mortgagee and its successors and assigns.  See Schroeder Aff. Ex. C ("Blaylock

Mortgage") (granting to the nominee mortgagee, MERS, and its successors and assigns "the

power of sale"); Snyder Aff. Ex. B ("Ervin-Talbot Mortgage") (same); Ex. re. Notice of

Removal 69–70 ("Andersons' Mortgage") (granting various rights to the nominee mortgagee

MERS, "and to the successors and assigns of MERS [ ] power of sale . . . ."); Ex. re. Notice of

Removal 130 ("Xiong's Mortgage") (granting the power of sale to Lender/mortgagee,

Washington Mutual Bank, and its successors and assigns); Ex. re. Notice of Removal 98–100

("Halver's Mortgage") (granting to mortgagee MERS, as well as its successors and assigns, the

"power of sale"); Ex. re. Notice of Removal 79–80 (Nelsons' Mortgage) (granting to

Lender/mortgagee, Wells Fargo, and Lender's successors and assigns the "power of sale").

Plaintiffs filed the present case in Hennepin County District Court on February 27, 2012.

The case was removed from state court on March 19, 2012.

## III. DISCUSSION

### A.   Standard of Review - Motion to Dismiss

A motion to dismiss a complaint for failure to state a claim is governed by Rule 12 of the

Federal Rules of Civil Procedure.  Fed. R. Civ. P. 12(b)(6).  In considering a Rule 12(b)(6)

motion, the court views the pleadings in the light most favorable to the nonmoving party and

treats the alleged facts as true.  See Ossman v. Diana Corp., 825 F. Supp. 870, 879-80 (D. Minn.

1993).  Conclusions of law made by the nonmoving party, however, are not "blindly accept[ed]."

Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990).  A Rule 12(b)(6) motion to

dismiss is granted when the factual allegations, even assumed to be true, do not entitle that party

to relief.  See, e.g., Taxi Connection v. Dakota, Minn. & E. R.R. Corp., 513 F.3d 823, 826-27

(8th Cir. 2008).  On a motion to dismiss, a court may refer to public records and documents to

which the complaint refers.  Illig, 652 F.3d at 976; Porous Media Corp v. Pall Corp., 186 F.3d

1077, 1079 (8th Cir. 1999).

Pleadings must "contain a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Rule 8(a) has been interpreted to mean that a pleading must allege "enough facts to state a claim of relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). To satisfy the standard of facial plausibility, a claim must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). This plausibility determination is "context-specific" and "requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but not 'shown'—'that the pleader is entitled to relief.'" Id. (quoting Fed. R. Civ. P. 8(a)(2)).

**B.      Defendants' Motions to Dismiss**

Defendants' Motions to Dismiss, while filed separately, all rely on many of the same arguments. Specifically, Defendants contend that Plaintiffs' Complaint fails Federal Rule of Civil Procedure 8(a) by not pleading facts sufficient to establish plausible grounds for relief. Moreover, Defendants also argue that even if the pleaded facts satisfied Rule 8(a), they are insufficient to state a claim against Defendants. Plaintiffs argue that their Complaint has been sufficiently pleaded.

**1.      Whether the Pleadings Satisfy Rule 8(a)**

Plaintiffs' Complaint alleges four different causes of action against all Defendants. However, the Complaint fails to identify specific conduct attributable to individual Defendants

as to specific Plaintiffs.  The Complaint groups all Plaintiffs together and all Defendants together, making broad averments such as "Defendants' mortgage liens are invalid and constitute a cloud on Plaintiffs' titles."  Compl. ¶ 39.  Broad pleading alleging no common facts fails to provide the requisite notice as to which Plaintiffs are asserting which claims against which Defendants.  In fact, this Court has already found this precise pleading by the same counsel insufficient in a complaint substantively identical to this Complaint.  In Tully v. Bank of America, N.A., No. 10-4734, 2011 WL 1882665 (D. Minn.May 17, 2011), the Court determined that the pleading of William Butler, Esq. ("Butler") failed to assert individualized complaints as required under Rule 8, which left Defendants "to guess which Plaintiffs are asserting which claims against which Defendants."  Id. at *6.  As a result, the Court held that Butler's complaint fell short of the minimal standard of specificity required by Rule 8.  Id.  Similarly, Butler's group pleadings in this present Complaint also fail to pass muster under Rule 8.

Additionally, the absence of any individualized factual allegations against specific Defendants renders Plaintiffs' Complaint facially deficient under Rule 8(a).  The Complaint reads like a "choose your own adventure" novel.  For example, Count I alleges that "upon information and belief," the mortgage liens are invalid for at least one of five potential defects, including that the "[m]ortgages are not properly perfected," the Defendants are not "Note Holders as defined in the Original Notes," the Defendants are not entitled to receive payments "under the express terms of Plaintiffs' Original Notes and Mortgages," the documents at issue "were not executed by an authorized individual," and the "[a]ssignments of Plaintiffs' Mortgages were invalid."  Compl. ¶ 40.  These bald assertions do not serve as a well-pleaded complaint — none of the assertions are individualized or supported by alleged facts.  Beyond alleging the

undisputed facts that Plaintiffs executed notes and mortgages with Defendants, and including select language from those agreements, the Complaint fails to provide any facts necessary to render these claims plausible rather than merely possible.  Plaintiffs' Complaint fails for this reason as well.

### 2.      Quiet Title Claim

Plaintiffs' Complaint also warrants dismissal because, even if the various counts were supported by alleged facts regarding individual Plaintiffs and individual Defendants, the legal theories underpinning the various counts do not entitle Plaintiffs to relief.   In Plaintiffs' quiet title claim, they allege that the Defendants' mortgage liens are invalid for various alleged defects.  Compl. ¶ 40(a).  Butler argues that the mortgages are not properly perfected, but this contention fails here as it has before every other court that has entertained it.  See, e.g., Welk v. GMAC Mortgage, LLC, — F.Supp.2d —, 2012 WL 1035433, at *10 (D. Minn. Mar. 29, 2012) (discounting Butler's argument that mortgages need to be perfected by stating "[t]his is nothing more than a restatement of Butler's frivolous argument that the mortgagee must hold the note for the mortgage and any foreclosure to be valid.").  In arguing that the mortgages are not properly perfected, plaintiffs are presumably contending that the mortgages need to be recorded.  See Landmark v. Schaefbauer, 41 B.R. 766, 770 (Bankr. D. Minn. 1984) (finding that "to . . . perfect . . . any lien" in 11 U.S.C. § 362(a)(4) includes recording a real-estate mortgage).  If Plaintiffs' argument is that mortgages need to be recorded, this too is meritless, because all the mortgages and assignments of mortgages here have been recorded.

Plaintiffs also argue Defendants' liens may be invalid because the "Defendants are not

Note Holders as defined in the Original Notes" or because Defendants are not "entitled to

receive payments" on the notes "under the express terms of Plaintiffs' Original Notes and

Mortgages."  Compl. ¶ 40(b–c).  This, once again, is the "show me the note" theory, which

Butler has repeatedly asserted and which has uniformly been rejected by this District.  Butler has

filed more than thirty cases all alleging some variation of the fundamentally flawed legal theory

that a party must simultaneously hold both the promissory note and the mortgage in order to

foreclose on the mortgage.  "[T]his argument has been rejected by every federal and state court

that has considered it under Minnesota law."  Welk, 2012 WL 1035433, at *4.  Indeed, it is

frivolous under Minnesota law, given the unambiguous holding of Jackson v. Mortg. Elec. Reg

Sys., Inc., 770 N.W.2d 487 (Minn. 2009), that Minnesota "case law establishes that a party can

hold legal title to the security instrument without holding an interest in the promissory note."  Id.

at 500.  As a result, "any disputes that arise between the mortgagee holding legal title and the

assignee of the promissory note holding equitable title do not affect the status of the mortgagor

for purposes of foreclosure by advertisement."  Id.  Moreover, the Eighth Circuit has also firmly

dismissed the "show me the note theory," stating that a mortgagee is "entitled to commence a

foreclosure by advertisement under Minnesota law, even if the promissory note (and the

corresponding equitable interest in the mortgage) had been transferred to someone else."  Stein

v. Chase Home Fin., LLC, 662 F.3d 976, 980 (8th Cir. 2011).  Additionally, to the extent that

Plaintiffs are now alleging that the mortgage documents themselves prohibit the power of sale to

successors and assigns, it is soundly repudiated by the unambiguous wording of each individual

mortgage at issue in this case.  See Schroeder Aff. Ex. C; Snyder Aff. Ex. B; Ex. re. Notice of Removal 69–70, 79–80, 98–100, 130.

Plaintiffs' Complaint also alleges that the mortgage liens could be invalid because the "Notices of Pendency, Powers of Attorney, and Assignments of Mortgages were not executed by an authorized individual."  Compl. ¶ 40(d).  While such a flaw in the mortgage liens could render them invalid, Plaintiffs have not alleged any facts indicating that an unauthorized individual signed any of the mortgages at issue.  Without more, this "shot in the dark" allegation does not meet the Iqbal and Twombly standard for pleading.

Plaintiffs' Complaint finally alleges that the mortgage liens may be invalid because they were invalidly assigned.  Compl. ¶ 40(e).  Again, this allegation is not supported by any facts in Plaintiffs' Complaint, but it is soundly rebuffed by the public record which clearly shows that the assignments were properly recorded.  Defs.' App. 001, 003, 034, 054–056; Snyder Aff. Ex. C; Schroeder Aff. Ex. D.   As previously stated, the mortgages at issue expressly permitted assignment.  The "MERS Statute," Minnesota Statute § 507.413, permits nominees to record "[a]n assignment, satisfaction, release, or power of attorney to foreclose."  Additionally, the precise argument Plaintiffs now make has been rejected by this District.  See Kebasso v. BAC Home Loans Servicing, LP, 813 F. Supp. 2d 1104, 1109 (D. Minn. 2011) (finding that the "argument that MERS had no authority to assign the mortgage fails.").  Because none of these various arguments have any merit, Plaintiffs' quiet title claim warrants dismissal.

### 3.    Declaratory Judgment Claims

Counts II and III of Plaintiffs' Complaint seek declaratory judgment.  In Count II, Plaintiffs contend that each note and mortgage was assigned to a trust and therefore Defendants' attempt to foreclose on the mortgages violates the terms of the agreements.  Compl. ¶¶ 44-47. Plaintiffs do not sufficiently allege that any of the notes or mortgages have been transferred to a trust, and the public records clearly show that at least three of the mortgages and notes at issue have not been assigned to a trust.  See Section II.  Therefore, Count II cannot be advanced against the Halvers, Andersons, or Xiong.

Even for those mortgages and notes which are part of a trust, Count II is baseless.  Courts have repeatedly held that a borrower is not a party to a trust agreement and so lacks standing to enforce it.  See, e.g., Dunbar v. Wells Fargo Bank, N.A., — F. Supp. 2d —, 2012 WL 1110161, at *6 n.8 (D. Minn. Apr. 3, 2012) ("The court notes that Dunbar is not a party to the trust agreement and lacks standing to challenge it."); Greene v. Home Loan Servs., Civ. No. 09-719, 2010 WL 3749243, at *4 (D. Minn. Sept. 21, 2010) ("Plaintiffs are not a party to the Pooling and Servicing Agreement and therefore have no standing to challenge any purported breach of the rights and obligations of that agreement.").  Moreover, mortgagors do not have standing to challenge a non-judicial foreclosure.  Kebasso, 813 F. Supp. 2d at 1113 ("as mortgagors, [plaintiffs] lack standing to challenge defendants' authority to foreclose.").  "[A] mortgagor cannot challenge a foreclosure on the basis that there might be a dispute between the legal and record holder of the mortgage, on the one hand, and the equitable holder of the mortgage, on the other hand."  Welk, 2012 WL 1035433, at *6.  Additionally, securitization does not affect the Defendants' rights to foreclose.  See Carlson v. JP Morgan Chase Bank, Civ. No. 10-272, 2010

WL 1417626, at *4 (D. Minn. March 15, 2010) ("But this Court cannot discern how any securitization in the present case gave rise to a cause of action.").  Securitization is standard practice, and Plaintiffs' loans specifically authorize securitization.  See, e.g., Snyder Aff. Ex. B ¶ 20.  Inasmuch as Count II challenges securitization, Plaintiffs lack standing and Count II is dismissed.

Count III of Plaintiffs' Complaint requests declaratory judgment on who can accelerate the promissory note balances, whether acceleration was properly pursued under the mortgages and notes, and whether the foreclosures are valid.  Because the mortgagors' rights are not affected by any potential dispute between the note-holders and mortgage-holders in this case, see Kebasso, 813, F. Supp. 2d at 1113, Plaintiffs lack standing to challenge their foreclosures under this theory.  Additionally, Plaintiffs' Complaint is devoid of allegations that their foreclosures were accelerated, let alone improperly accelerated.  Accord Welk, 2012 WL 1035433, at *11 ("As for Butler's argument that the notes reserve the power to accelerate solely to the note holder . . . it has nothing to do with plaintiffs' claims in this case.  Nowhere . . . do plaintiffs allege that their loans were improperly accelerated.").  The only mention of acceleration states that the Defendants "do[] not possess and [are] not entitled to enforce Plaintiffs [] Original Note[s] through acceleration and a foreclosure sale."  Compl. ¶¶ 30–35.  This is still another reprise on

Butler's discredited "show me the note" theory, and as such warrants no further discussion.[2]

Count III is dismissed.

### 4.   Slander of Title Claim

Plaintiffs' fourth count alleges that Defendants publicly recorded mortgage deeds in the name of a nominee lacking legal title, that the Defendants then maliciously published foreclosure documents which they knew or should have known were false, and which injured Plaintiffs. Compl. ¶¶ 57–60.  In Minnesota, slander of title requires a plaintiff to establish: (1) a false statement; (2) was published to others; (3) was published maliciously; and (4) the publication caused Plaintiff pecuniary loss in the form of special damages.  Paidar v. Hughes, 615 N.W.2d 276, 279–80 (Minn. 2000).  To be a malicious statement, it must be a "groundless disparagement of the plaintiff's title or property . . . . made without probable cause." Quevli Farms, Inc. v. Union Sav. Bank & Trust Co., 226 N.W. 191, 192 (Minn. 1929).   References to amounts due on mortgages are not properly characterized as false or misleading statements.  See Welk, 2012 WL 1035433, at *13.

Plaintiffs have failed to establish all elements except that the property documents were published — they have failed to identify a single false statement made by Defendants, have failed to allege malice on Defendants' behalf, and have not shown how they experienced

---

[2]Moreover, permitting Plaintiffs to seek judicial determination of the validity of a foreclosure by advertisement would in effect render non-judicial foreclosures meaningless, as courts would be in the role of interpreting which party could foreclose and whether acceleration was proper.  Minnesota Statute § 580.02 does not require proof of the right to accelerate or proper acceleration as an enumerated condition for a valid foreclosure, and as such, Count III is not a valid legal theory.

pecuniary loss as a result of the publication of the amounts due on their mortgages.  Accordingly, this Court dismisses the slander of title claim.  <u>Accord</u> <u>Welk</u>,  2012 WL 1035433, at *13; <u>Dunbar</u>, 2012 WL 1110161, at *7.

## C.     Motion to Remand

In their Motion to Remand, Plaintiffs assert that the doctrine of prior exclusive jurisdiction deprives this Court of subject matter jurisdiction.  The purpose of the doctrine of prior exclusive jurisdiction is to prevent conflicts inherent when two different courts simultaneously adjudicate the same matter.  <u>Penn Gen. Cas. Co. v. Pa. ex rel. Schnader</u>, 294 U.S. 189, 195 (1935).   Under the prior exclusive jurisdiction doctrine, "when one court is exercising *in rem* jurisdiction over a *res*, a second court will not assume *in rem* jurisdiction over the same *res*."  <u>Marshall v. Marshall</u>, 547 U.S. 293, 311 (2006).  Prior exclusive jurisdiction could also arise when a court "has acquired some form of specialized, continuing jurisdiction over the property."  <u>Welk</u>, 2012 WL 1035433, at *16.

Because Plaintiffs' Complaint is dismissed, their Motion to Remand is denied as moot. However, the vacuous nature of Butler's arguments requires analysis for Defendants' Motion for Sanctions.  No pending state court proceeding involves the same properties involved in this case. The Hennepin County District Court was divested of jurisdiction over this case at the moment it was removed to federal court.  <u>See</u> <u>Welk</u>, 2012 WL 1035433, at *17; <u>Dunbar</u>, 2012 WL 1110161, at *3–4; <u>see also</u> 28 U.S.C. § 1446(d) (after removal, the state court is prohibited from proceeding further unless the case is remanded).  At the time this case was filed in federal court, no concurrent state proceeding involved these same properties.  Therefore, the doctrine of prior

exclusive jurisdiction is inapposite.  At oral argument, counsel agreed that no eviction proceedings predate the filing of this case in federal court and that eviction proceedings were initiated against the Andersons only after this case was filed with this Court.  Further, not only are no concurrent proceedings occurring in state and federal state court; the state eviction proceedings are in personam actions, not in rem or quasi in rem actions, and so do not fall under the auspices of the prior exclusive jurisdiction doctrine.  See Olson v. Bank of America, N.A., No. 11-cv-3710, 2012 WL 1660615, at *3 (D. Minn. Apr. 19, 2012) (holding that the doctrine of prior exclusive jurisdiction does not apply because a state eviction action is *in personam* not *in rem*); Curran v. Nash, 29 N.W.2d 436, 438 (Minn. 1947).

Finally, Plaintiffs' argument that the state court has specialized, continuing jurisdiction over these properties is specious.  The case cited by Plaintiffs, In re Trust Created by Hill, 728 F. Supp. 564 (D. Minn. 1990), dealt with an express trust and therefore under Minnesota statute was the exclusive province of state courts.  Id. at 567.  Foreclosures are not a subject matter over which state courts have continuing, specialized jurisdiction.  Just as Butler has been rejected by the other federal judges to whom he has repeated this argument and this exact citation, his arguments are rejected here.  See, e.g., Welk, 2012 WL 1035433, at *17; Dunbar, 2012 WL 1110161, at *4.  Plaintiffs' Motion to Remand is denied.

**D.     Motion for Sanctions**

Pursuant to Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, and the court's own inherent authority to sanction, Defendants' Motion for Sanctions urges this Court to reprimand Butler for his continued spurious claims and baseless litigation.  Butler, in response, asserts that

sanctions are inappropriate because he has not brought "show me the note" claims in this case, and because in this case, he has not violated Rule 11.

Sanctions are imposed when a pleading is submitted for an improper purpose, "such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation.  Fed. R. Civ. P. 11(b)(1).  Sanctions are also warranted if the legal claims are not "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law."  Fed. R. Civ. P. 11(b)(2).  To ascertain whether Rule 11 has been violated, the court "must determine whether a reasonable and competent attorney would believe in the merit of an argument."  Coonts v. Potts, 316 F.3d 745, 753 (8th Cir. 2003) (citations and quotation omitted).  When the party to be sanctioned has had notice and a chance to respond, the court may impose an appropriate sanction for a Rule 11 violation.  Fed. R. Civ. P. 11(c)(1).  A sanction must only be the amount that "suffices to deter repetition of the conduct or comparable conduct by others similarly situated."  Fed. R. Civ. P. 11(c)(4).  "[T]he central purpose of Rule 11 is to deter baseless filings in district court. . . ."  Cooter & Gell v. Hartmarz Corp., 496 U.S. 384, 393 (1990); see also Dixon v. Rybak, No. 06-2579, 2006 WL 2945564, at *3 (D. Minn. Oct. 13, 2006) (quoting Zatko v. California, 502 U.S. 16, 17 (1991) (internal quotation omitted) ("[T]he Court's goal of fairly dispensing justice is compromised when the Court is forced to devote its limited resources to the processing of repetitious and frivolous [filings] such as these.")).

A court may also impose sanctions under 28 U.S.C. § 1927, which permits a court to award attorneys' fees and costs incurred as a result of attorney conduct which "so multiplies the proceedings in any case unreasonably and vexatiously."  Objectively bad faith behavior, or the

reckless filing of a frivolous claim, are appropriate triggers for attorneys' fees under 28 U.S.C. §

1927.  See Clark v. United Parcel Serv., Inc., 460 F.3d 1004, (8th Cir. 2006) (quoting 28 U.S.C.

§ 1927) ("A court may require counsel to satisfy personally attorneys' fees reasonably incurred

by an opposing party when counsel's conduct 'multiplies the proceedings in any case

unreasonably and vexatiously.'").  "Where a refusal to dismiss compounds the misconduct in

bringing a claim, sanctions under § 1927 are appropriate." Bergeron v. Nw. Pub. Inc., No. 94-

1124, 1996 WL 210789, *9 (D. Minn. Jan. 12, 1996).  In addition to Rule 11 and 28 U.S.C. §

1927, a court also retains its inherent authority and considerable discretion in sanctioning

attorney misconduct.  Chambers v. NASCO, Inc., 501 U.S. 32 (1991).

Sanctions are warranted because of Butler's repeated attempts to assert the rejected

"show me the note" theory, as well as his baseless quiet title claims and meritless slander of title

arguments.  Moreover, Butler's frivolous filing of his Motion to Remand, premised on an absurd

legal proposition, merits sanctions in and of itself for unreasonably prolonging the proceedings.

Although Butler is cautious to avoid using the phrase "show me the note," in an apparent effort

to distance this present litigation from the more than thirty similar multi-plaintiff, multi-

defendant property cases he has filed in this District,[3] Butler's quiet title claim and his

---

[3]See Stein, 662 F.3d 976; Tully, 2011 WL 1882665; Butler v. Bank of America, N.A., No. 11-461, 2011 WL 2728321, (D. Minn. July 13, 2011); Jaakola v. CitiMortgage, Inc., No. 11-cv-1272; Emmick v.Bank of America, N.A., No. 11-cv-1307; Lundeen v. CitiMortgage, Inc., No. 11-cv-1604; Rother v. Wells Fargo Bank, N.A., No. 11-cv-1703; Larsen v. Bank of America, N.A., No. 11-cv-1775, 2011 WL 6065426 (D. Minn. July 21, 2011); Cartier v. Wells Fargo Bank, N.A., No. 11-cv-2168; Iverson v. Wells Fargo Bank, N.A., No. 11-cv-2225; Joppru v. JPMorgan Chase Bank, N.A., No. 11-cv-2276; Robinson v. Bank of America, N.A., No. 11-cv-2284; Pope v. Wells Fargo Bank, N.A., No. 11-cv-2496; Kent v. Bank of America, N.A., No. 11-cv-2315; Jerde v. JPMorgan Chase Bank, N.A., No. 11-cv-2666; Peterson v. CitiMortgage, Inc., No. 11-cv-2385; Murphy v. Aurora

declaratory judgment claim in Count III are a remix of his discredited theory that a mortgage-holder must also possess the promissory note in order to legally foreclose on a property.  See Section III(B)(2).  The Minnesota Supreme Court soundly rejected this theory in 2009, see Jackson, 770 N.W.2d 487, and the Eighth Circuit repudiated it in 2011, when it was brought by Butler then.  See Stein, 662 F.3d 976.  Notwithstanding this clear, binding legal precedent, Butler has brazenly continued to file cases based in whole or in part on this worthless legal argument.  See, e.g., Murphy v. Aurora Loan Serv., LLC, Civ No. 11-2750, 2012 WL 104543, at * 3 (D. Minn. Jan. 12, 2012) ("Plaintiffs' entire claim in this case is based on a legal fallacy that Plaintiffs' counsel William Butler, Esq., has doggedly refused to acknowledge."); Iverson, 2011 WL 6065358, at *3 ([Butler's] claim . . . is predicated on the legal fiction that only the holder of a promissory note may foreclose on a mortgage."); Larsen, 2011 WL 6065426, at *8 ("[T]he allegations . . . depend on [Butler's] misunderstanding or refusal to acknowledge the holding of Jackson — that a mortgagee does not need to have an interest in a promissory note to foreclose on a mortgage.").  Butler's continued attempts to assert claims dependent on the rejected "show

---

Loan Services, LLC, No. 11-cv-2750; Brinkman v. Bank of America, N.A., No. 11-cv-3240; Welk, 2012 WL 1035433; Kraus v. CitiMortgage, Inc., No. 11-cv-3213, 2012 WL 1581113 (D. Minn. May 4, 2012); Xiong v. Bank of America, No. 11-cv-3377; Karnatcheva v. JPMorgan Chase Bank, N.A., No. 11-cv-3452, 2012 WL 1657531 (D. Minn. May 11, 2012); Dunbar, 2012 WL 1110161; Vang v. PNC Mortgage Inc., No. 11-cv-3741; Olson v. Bank of America N.A., No. 11-cv-3710; Adorno v. Citimortgage Inc.,No. 12-cv-55; Anderson v. CitiMortgage Inc., No. 12-cv-230; Johnson v. Deutsche Bank Nat'l Trust Co., No. 12-cv-445; Haubrich v. U.S. Bank, N.A., No. 12-cv-565; Mustafa v. Bank of America, N.A., 12-cv-590; Novak v. JPMorgan Chase Bank, N.A., No. 12-cv-00589; Mutua v. Deutsche Bank Nat'l Trust Co., No. 11-cv-3761; Nelson v. Bank of New York Mellon, 12-cv-1096.

me the note" theory are unwarranted under existing law and are behavior which requires sanctions under Rule 11.

In addition to his recurrent "show me the note" claims, Butler's quiet title and slander of title claims have also been dismissed time and time again by Minnesota courts.  See, e.g., Welk, 2012 WL 1035433, at *21 n.14 (dismissing Butler's quiet title claim although he "seems to regard the phrase 'quiet title' as a talisman that, through a process of legal alchemy, transforms frivolous claims into meritorious ones"); Tully, 2011 WL 1882665, at *7 (summarily dismissing all Butler's claims, including slander of title claim); Kraus, 2012 WL 1581113, at *4 (dismissing all Butler's claims, including slander of title and quiet title claims).  Butler's Complaint in this case is *deja vu* all over again."  Yogi Berra, Yogi-isms, Yogi Berra Official Web Site, (June 26, 2012, 9:18 AM), http://yogiberra.com/yogi-isms.html.  In Karnatcheva, the court dismissed with prejudice Butler's four-count complaint which is virtually identical in all respects to this present Complaint but for party names and property addresses.  Id. at *4–7.  Further, Butler has filed mirror image complaints in four other cases, all of which are still active in this District.  See Johnson, 12-cv-445; Haubrich, 12-cv-565; Novak, 12-cv-589; Mustafa, 12-cv-590.  Butler's insistence on re-litigating losing arguments is staggering, and it comes with a cost, because it multiplies the expense of litigation and monopolizes scarce judicial resources.  Moreover, no one, not even Butler, can reasonably or competently believe in the merits of any of these arguments.  Butler's persistent filing of frivolous arguments is egregious and merits sanctions under Rule 11.

Finally, Butler's actions warrant attorneys' fees under 28 U.S.C. § 1927.  Butler's refusal to dismiss a complaint after its twin has been dismissed with prejudice by another judge in this

very District compounds his misconduct.  His Motion to Remand unreasonably and vexatiously

multiplies the proceedings here, as it has no legal merit and has already been rejected by at least

three judges in this District.  See Karnatcheva, 2012 WL 1657531, at *2; Welk, 2012 WL

1035433, at *15; Cartier v. Wells Fargo Bank, N.A., Civ. No. 11-2168.  Butler's refusal to

dismiss a complaint which never had any hope of succeeding, as well as his filing of a frivolous

remand motion after Defendants moved for sanctions, all warrant attorneys' fees incurred as a

direct result of his blatant behavior.  The attorneys' fees incurred after the final motion to

dismiss, filed on April 19, 2012, were a direct result of Butler's unreasonable vexatious

behavior, and are appropriately awarded as sanctions.

Butler is no stranger to the rule of sanctions.  Butler has continued to file and litigate

frivolous, meritless foreclosure cases after three distinct judges in this District have sanctioned

him.  See Welk, 2012 WL 1035433, at *26–27 (assessing $50,000 in sanctions); Murphy v.

Aurora Loan Servs., LLC, — F. Supp. 2d —, 2012 WL 1574122, at *1 (D. Minn. May 4, 2012)

(granting $50,000 in sanctions); Dunbar v. Wells Fargo Bank, N.A., Civ. No. 11-3683 (D. Minn.

June 6, 2012) (awarding attorneys' fees as sanction).  Moreover, "Butler's actions are not the

result of negligence . . . . [he] knows exactly what he is doing; he has deliberately chosen to

bring hundreds of frivolous claims in the most burdensome manner possible, and he has

repeatedly used deceptive and misleading tactics to delay their ultimate resolution."  Welk, 2012

WL 1035433, at *23.  Given Butler's undeterred filing of frivolous claims, his past sanctions

have been insufficient deterrents.  The Court finds that the amount of $75,000, plus attorneys'

fees incurred by Defendants in litigating this case, is the least amount necessary to deter

repetition of this egregious conduct by Butler.  This Court does not impose such sanctions

lightly, but the aforementioned reasons militate for such a stern sanction: (1) the egregious and bad faith nature of Butler's conduct; (2) the significant burden he has imposed on six defendants and their legal counsel; (3) Butler's unflagged filing and continued litigation of claims which have been dismissed by every court to entertain them; (4) his utterly frivolous Motion to Remand; and (5) his cruel arousal of unrealistic hope in his clients, all of whom face foreclosure and for whom this is an extremely emotional issue.  For all these reasons, sanctions are warranted.

## IV.  CONCLUSION

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED**:

1. Defendants Federal National Mortgage Association, HSBC Bank USA, N.A., MERSCORP, Inc., Mortgage Electronic Registration Systems, Inc., and Wells Fargo Bank, N.A.'s Motion to Dismiss [Docket No. 3]  is **GRANTED**;

2. Defendants MERSCORP, Inc., and Mortgage Electronic Registration Systems, Inc.'s Motion to Dismiss [Docket No. 5] is **GRANTED**;

3. Defendants HSBC Bank and HSBC Mortgage Services, Inc.'s Motion to Dismiss [Docket No. 7] is **GRANTED**;

4. Defendants HSBC Bank, MERSCORP, and MERS' Amended Motion to Dismiss [Docket No. 14] is **GRANTED**;

5. Plaintiffs' Amended Complaint [Docket No. 1] is **DISMISSED** with prejudice;

6.       Plaintiffs' Motion to Remand [Docket No. 18] is **DENIED**; and

7.       Defendants Federal National Mortgage Association, HSBC Bank USA, N.A., MERSCORP, Inc., Mortgage Electronic Registration Systems, Inc., and Wells Fargo Bank, N.A.'s Motion for Rule 11 Sanctions Against Plaintiffs' Counsel [Docket No. 35] is **GRANTED**;

       a.       Pursuant to Fed. R. Civ. P. 11, attorney William Butler is **ORDERED** to pay into Court a sanction of $75,000.  This amount is due and payable immediately.

       b.       No later than 14 days from the date of this order, Defendants must file and serve affidavits attesting to fees and costs they have incurred as a result of William Butler's unreasonable and vexatious multiplication of these proceedings since April 19, 2012, as identified in the body of this Order.

       c.       Butler may file and serve a response of no more than 1,000 words to each of these affidavits no later than 21 days from the date of this Order.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:


_____s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: June 29, 2012.